UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PETER PERNAL, RYAN GORDON, ROBERT
ELY, TIMOTHY TANSKI, JEFFREY PINKOSH,
JOHNATHAN FREGMEN, on behalf of
themselves and all others similarly situated,

                            Plaintiffs,

    -against-

PROFLAME INC., JOHN HUMPHRY, and
AMELIA A. HUMPHRY,

                            Defendants.
----------------------------------------------------------------X

**MEMORANDUM
DECISION AND ORDER**
21 CV 4526 (JMW)

David Harrison
Julie Salwen
**Harrison, Harrison & Associates, Ltd.**
110 Highway 35, 2nd Floor
Red Bank, NJ 07701
*For All Plaintiffs*

Christopher Dooley
Desiree Mia Gargano
Douglas E. Rowe
**Certilman Balin Adler & Hyman, LLP**
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
*For All Defendants*

**WICKS,** Magistrate Judge:

## I.    BACKGROUND

Plaintiffs Peter Pernal, Ryan Gordon, Robert Ely, Timothy Tanski, Jeffrey Pinkosh, Johnathan Fregmen, commenced this action against Defendants Proflame Inc., John Humphry, and Amelia A. Humphry, by way of Complaint on August 11, 2021. (DE 1.) The action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor

1

Law § 190, *et seq.* ("NYLL"), upon Plaintiffs' allegations that Defendants failed to pay Plaintiffs appropriate overtime wages. (*Id.*)

According to the Complaint, Defendants operate a company which sells propane to residential and commercial customers. (*Id.* at ¶ 42.) Plaintiffs were each drivers who delivered propane for Defendants' company whose pay ranged from $20-40 per hour. (*Id.* at ¶¶ 9-29; 43.) Plaintiffs allege that Defendants regularly scheduled Plaintiffs to work five days a week, although in the busy winter season Plaintiffs were asked to work on their days off, resulting in Plaintiffs occasionally working seven days a week. (*Id.* at ¶¶ 51-54.) Plaintiffs allege they were often required to come in early and stay late if they were unable to finish their deliveries within the 8-hour shift period and were not paid for this pre and post-shift work. (*Id.* at ¶¶ 53-69.) Plaintiff Tanski also asserts a retaliation claim alleging that because he demanded to be paid for all the time that he worked, he was fired. (*Id.* at ¶¶ 91-99.)

On September 8, 2022, the parties attended a full day of mediation before Mediator Ray Nardo, Esq. and ultimately reached a settlement after a mediator's proposal.[1] On October 3, 2022, the parties jointly moved in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement. (DE 20.) Upon review of motion, the Court instructed Plaintiffs' counsel to supplement their submission and provide contemporaneous billing records.[2] (Electronic Order, dated Oct. 4, 2022.) Plaintiff's counsel submitted contemporaneous billing records on October 24, 2022. (DE 21.)

All parties have signed a consent form, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, granting this Court power to conduct all proceedings in this matter and enter final

---

[1] The Court gratefully acknowledges the work Mediator Nardo.

[2] The Court further scheduled a virtual Fairness Hearing for October 31, 2022. The hearing was later cancelled after Plaintiffs' counsel supplemented the motion with contemporaneous billing records.

judgement. (DE 19.) For the following reasons, the motion for settlement approval is GRANTED.

## II. STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

> Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id.*

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4)

3

whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

4

Against this backdrop, the Court reviews the proposed settlement and motion.

### III.    DISCUSSION

After a full day of zealous negotiations during a formal mediation, the parties ultimately—based upon a mediator's proposal—agreed to a proposed settlement agreement ("Settlement Agreement"). (DE 20.) The Settlement Agreement was fully executed on October 3, 2022, and filed with the Court for approval. (*Id.*) Thereunder, Plaintiffs' claims are to be dismissed with prejudice against Defendants, who would pay Plaintiffs $190,000 in valid consideration. (*Id.*) Plaintiffs' counsel would receive $62,296 in fees, representing slightly less than one-third contingency pursuant to Plaintiffs' retainer, and costs in the amount of $1,112, leaving $126,592 to be paid out to Plaintiffs. (*Id.*) For the reasons set forth below, the Court finds that the monetary and non-monetary terms of the settlement are both fair and reasonable under *Cheeks*.

***Reasonableness of the Settlement***

Based on the parties' submissions—the parties' request of settlement approval (DE 20), the Settlement Agreement (*id.*), and Plaintiffs' counsel's timesheets (DE 21)—the Court finds that application of the *Cheeks* factors favor approval.

*First*, the Settlement Agreement provides for a total payment of $190,000,[3] just over two-thirds of which will be paid to Plaintiffs as compensation for their claims for unpaid wages, statutory penalties, interest, liquidated damages and attorneys' fees, and Plaintiff Tanski's claim of retaliation.[4] (DE 20.) The $126,592 settlement sum is set to be distributed amongst Plaintiffs in proportion to their damages and as agreed upon between them using a payment schedule set

---

[3] The Settlement Agreement provides that in the event the settlement amount is not paid in its entirety before the end of 2022, the Settlement Amount increases by $3,000, thus making the total payment $193,000. (DE 20.)

[4] Excluded from the claims settled under the Settlement Agreement are Plaintiff Ely's claims of discrimination and wrongful termination which were separately filed in New York Supreme Court. (*Id.*)

forth in section 4(A) of the Settlement Agreement. (*Id.*) The parties exchanged detailed damages calculations for settlement purposes and in doing so Plaintiffs determined that their estimated unpaid overtime wages total $107,007. (*Id.*) Plaintiffs believe that a settlement for $190,000—approximately 175% of their estimated unpaid overtime wages—is a prudent decision that would avoid the costs, burdens, and risks of future litigation. Plaintiffs further wished to forego the inherent delays and uncertainties of litigation, the expense of proceeding with further discovery and trial, and the need to take time away from their current jobs for the demands of this litigation, should it proceed to trial. (*Id.*) In response, Defendants assert that the settlement is fair and reasonable for the same reasons: it will help to avoid burdens and risks of future litigation. This factor weighs in favor of approval

*Second*, the Court agrees with Plaintiffs that settlement will avoid extensive litigation costs by avoiding further document drafting, depositions, and trial. (*See id.*) The proposed settlement allows the parties to avoid inevitable burdens and expenses in the months it would take to ultimately bring this matter to trial. Thus, this factor weighs in favor of approval.

*Third*, there is a legitimate legal dispute between the parties, and settlement is a means of avoiding significant litigation risks for both. Plaintiffs allege they are entitled to damages because Defendants regularly scheduled Plaintiffs to work overtime delivering propane but failed to pay Plaintiffs appropriate overtime wages, provide complete and accurate wage notices and statements, and retaliated against Plaintiff Tanski. (DE 1.) Plaintiffs believe that their potential for recovery may even be greater than $190,000 if they were successful at trial. (DE 20.) Defendants, on the other hand, contend that GPS records demonstrate that Plaintiffs did not work anywhere near their claimed overtime hours. (*Id.*) In fact, Defendants state they often *overpaid* Plaintiffs because of the meal/lunch breaks Plaintiffs allegedly took. (*Id.*) Defendants assert that Plaintiff's version of

6

events may not be believed because Plaintiffs do not have records of their off-the-clock time and that even so, if Plaintiff's succeeded at trial the amount of any unpaid wages found would be substantially less than their estimated claim for unpaid wages. (*Id.*) Defendants purportedly maintain numerous documents calling into question the veracity of Plaintiff Tanski's retaliation claim. (*Id.*) Nonetheless, the Settlement Agreement reflects a compromise between Plaintiffs and Defendants to avoid the inherent risks of litigation.

*Fourth*, the Court finds that the parties have properly engaged in bargaining at arms-length to reach the Settlement Agreement. All parties are represented by counsel well experienced in this field. On September 8, 2022, the parties participated in a full day mediation before Mediator Nardo during which the parties "negotiated hard" and presented damages calculations. (*Id.*) Ultimately, a settlement was reached based on a mediator's proposal. (*Id.*) The parties' cooperation is further shown by their meeting, conferring, and submission of a joint motion for approval. (*Id.*)

*Fifth*, the parties and counsel negotiated in good faith and agreed upon the terms within the Settlement Agreement. (*Id.*) Plaintiffs represent, and the ultimate number indeed reflects, that all parties made compromises on their positions to achieve a fair and reasonable settlement. (*Id.*) The record bears no signs that this settlement is a product of fraud, coercion, or collusion.

Next, the Court will address the *Wolinsky* factors in considering the impact of the settlement. For the reasons to follow, the factors do not compel rejection of the proposed settlement.

*First*, though the record shows no evidence indicating whether there are similarly situated Plaintiffs, the text of the settlement agreement will not preclude their claims. The release provision of the Settlement Agreement provides that Plaintiffs, themselves, are releasing Defendants from

7

any claims that could have been raised by Plaintiffs "based on the facts asserted in the pleadings" under federal, state, and/or local wage and hour laws. (*Id.*) Indeed, the Settlement Agreement states, "[t]his release is limited solely and only to wage and hour claims, and Plaintiff Tanski's retaliation claims, that have arisen on or prior to" the date of execution. (*Id.*) The plain text of the document, coupled with the corresponding lack of evidence as to the existence of similarly situated Plaintiffs, equates to a fairly weak showing of the first *Wolinsky* factor.

*Second*, given the time and resources spent during the litigation process, and the substantial settlement amount, is likely that Defendants will be deterred from violating wage and hour laws in the future.

*Third*, the record offers no history previous non-compliance with the FLSA by Defendants, nor have the parties suggested otherwise. Thus, this factor holds little weight.

*Fourth*, the desirability for a mature record is weak. The parties underwent a full day of negotiations at mediation and reviewed sufficient damages calculations to approximate each side's estimated recovery and risk without need for a further record, so a further record to substantiate that record is unnecessary. The Court acknowledges that although maturation of the record could lead to further developments, this factor alone does not require the Court to reject the proposed settlement. *See Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030, at *3 (E.D.N.Y. Oct. 25, 2021) ("Last, although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement").

Lastly, the proposed Settlement Agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. First, it contains no confidentiality provision. (DE 20.) Second, while the Settlement Agreement contains a release, it is not overbroad. Indeed, it is limited

8

to Plaintiffs' FLSA and NYLL claims and Tanski's retaliation claim raised in this lawsuit. (*Id.*) The clause is aimed at preventing frivolous litigation arising out of facts and claims from the Complaint. Third, the Plaintiffs' counsel's expenses and fees equate to less than the contracted one-third of the settlement amount. (*Id.*) Moreover, as discussed more fully below, Plaintiffs' counsel has provided documentation supporting the proposed attorneys' fees, which the Court finds to be fair and reasonable.

***Attorneys' Fees***

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *See, e.g.*, *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209

9

F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiffs' counsel requests $62,296 out of the $190,000 settlement. (DE 20.) This figure is slightly less than the on-third contingency agreed to in the retainer agreement between Plaintiffs and counsel. (DE 41.) Plaintiffs' counsel further requests reimbursement of $1,112 for identifiable costs and expenses. (*Id.*) In support, Plaintiff submitted contemporaneous billing records conveying the attorneys' billing rates, description of services and the hours worked. (DE 21.) The net settlement—the total settlement less the attorneys' expenses and costs incurred during the litigation of $1,112—is $188,888. A true one-third contingency fee of the net settlement amount would equate to $62,963. Here, Plaintiffs' counsel is seeking slightly less: $62,296. (*Id.*) Moreover, the Court finds that the $1,112 in expenses and costs were incidental and necessary to represent Plaintiffs and reach a settlement in this matter. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (internal quotation marks omitted). Defendants have not taken a position regarding Plaintiffs' application for attorneys' fees and costs and appear to have acquiesced, given their inclusion within the proposed Settlement Agreement. Thus, based on this Circuit's reliance on the one-third contingency fee standard, the requested $62,296 in attorneys' fees and $1,112 in costs and expenses is reasonable under the percentage method.

"[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff asserts that David Harrison, the Managing Partner at Harrison, Harrison & Associates ("HHA") who specializes in FLSA and NYLL wage and hour individual, multi-plaintiff, and collective actions, billed 83.5 hours working on this case at a rate of $450 per hour. (DE 21.) Additionally, Julie Salwen, an attorney at HHA with approximately nine years' experience working on plaintiff-side employment litigation matters billed 6.9 hours at a rate of $350 per hour. (*Id.*) Additionally, attorney Lea Deutsch, an attorney who has worked with HHA for many years doing excel/data analysis billed 8 hours at a rate of $250 per hour performing records/dana analysis on Defendants' GPS records. (*Id.*) The Court finds these billing rates reasonable.[5] *See e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 103 (E.D.N.Y. 2020) (noting that "Courts in this District have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates," and collecting cases). Together, Plaintiffs' counsel invested $41,990 in attorney hours. (DE 21.) The lodestar

---

[5] The hours billed by Mr. Harrison and Ms. Salwen as stated in the motion for settlement approval differ slightly from those reflected in the contemporaneous billing records. (*Compare* DE 20, *with* DE 21.) Specifically, the motion states that Mr. Harrison billed 82.1 hours, whereas the billing records reflect he billed 83.5. (*Id.*) The motion provides that Ms. Salwen billed 5.3 hours whereas the billing records reflect she billed 6.9. (*Id.*) Considering the minimal discrepancy between these numbers, the Court does not see grounds to prevent an award of attorneys' fees. The Court utilized the hours as reflected on the billing records in conducting its lodestar calculation.

multiplier—the fee requested ($62,296) divided by the lodestar calculation ($41,990)—is 1.48, well below the range of problematic multipliers. *See Cohan v. Columbia Sussex Mgmt., LLC*, 12-CV-3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) ("Courts regularly award lodestar multipliers from two to six times lodestar") (citing *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011). The Court finds the overall number of hours exerted on this matter to be reasonable, considering the length of time to commence the action, negotiations, and a full day of mediation.

In sum, the Court concludes that the requested attorneys' fees and costs are reasonable and therefore appropriate.

## IV. CONCLUSION

For the foregoing reasons, the parties' motion for approval of the Settlement Agreement is GRANTED. Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE. The parties shall file a Stipulation of Dismissal with Prejudice on or before December 2, 2022, and the Court will direct the Clerk's Office to close this case thereafter.

Dated: Central Islip, New York
November 2, 2022

S O  O R D E R E D:

/s/ *James M. Wicks*
      JAMES M. WICKS
United States Magistrate Judge